## A95A0396. GIGNILLIAT v. GENTRY.
(457 SE2d 833)

ANDREWS, Judge.

This court granted Gignilliat's application to appeal the Glynn County Superior Court's order holding him in contempt. We reverse.

Gignilliat and Gentry were divorced in 1988 in Hall County. Custody of the two minor sons of the couple was placed in Gentry, the mother. Gentry remarried and moved to Glynn County with the boys in August 1989.

In Glynn County Superior Court Case No. 90-02617, Gignilliat filed an action seeking a change in custody of the boys and a modification of visitation. The superior court transferred the case to juvenile court on January 4, 1991 "for plenary disposition of all issues presented by the pleadings in the action, with the exception of [Gentry's] counterclaim for contempt, which is hereby dismissed without prejudice for refiling in the Superior Court of Hall County, Georgia."

On March 14, 1991, the juvenile court entered its order changing the custody of the two boys to Gignilliat. Paragraph 6 of that order provided that as long as Gignilliat resided in Hall County, he "shall pay for the children to make four (4) trips each year to the Glynn County, Georgia area . . . and back to the Hall County, Georgia area. . . . [He] shall have the right to decide which four round trips each year he will pay for. Two of the trips provided by [him] shall be by round trip air transportation and the mode of transportation for the other two trips shall be selected by [him] at his option." He was required to give Gentry two weeks notice of the impending trips.

In July 1993, Gignilliat filed Glynn County Superior Court Case No. 93-00946 in which he sought support payments from Gentry for the children.

While Case No. 93-00946 was still pending, in June 1994, Gentry filed a separate motion for contempt against Gignilliat in Glynn County Superior Court. This was given Case No. 94-01119 and alleged that Gignilliat had not complied with the provisions of the juvenile court's order relating to providing four trips a year for the boys for 1992, 1993, and 1994. Gignilliat filed a motion to dismiss this contempt action, contending that only the juvenile court could entertain motions for contempt of its order. A hearing was held by the superior court on June 24, 1994, which was meant to resolve the pending issues in Cases Nos. 93-00946 and 94-01119. The record reflects that most of the issues in 93-00946 had been tentatively resolved by agreement at the time of the hearing.

On July 18, 1994, a consent judgment was filed in Case No. 93-00946. It stated that its paragraph 10 "entirely supersedes and replaces the provisions of numbered paragraph 6 of the Glynn County Juvenile Court Order." Paragraph 10 provided that Gignilliat "shall

bear the expense, at whatever mode of transportation [he] in his discretion, deems appropriate, for the children to visit the [mother] at her home in the Glynn County, Georgia area, one time during each quarter of each calendar year *when and as specified by the defendant [mother]*, beginning with the effective date of this Order." (The italicized portion was added to the proposed order by the court.)

On August 15, 1994, the order here appealed was entered in Case No. 94-01119. In it, the court stated that it "adopts the Order of the Juvenile Court of Glynn County . . . as this Court's Order and gives it full force and effect." The order concluded, without citation of authority, that transferring the case to juvenile court did not deprive the superior court of jurisdiction to hear contempt claims involving the custody/visitation provisions. The court found Gignilliat in contempt of the juvenile court order for not providing each child with two round trip plane tickets "for each of the years since entry of the Order, to wit: 1991, 1992, 1993 and the first six (6) months of 1994." The order also directed that Gignilliat pay $1,499 as a fine for contempt, which the court concluded was the value of tickets not purchased by him. There was no evidence, however, that Gentry had expended any money on airline tickets to provide transportation to the boys.

Although twelve enumerations of error are presented by Gignilliat, we need only consider four, the first three and number twelve.

1. The first three enumerations deal with the superior court's failure to dismiss the contempt petition for lack of jurisdiction, incorporating the juvenile order into its own, and modifying the juvenile court order.

OCGA § 15-11-6 (b) provides that "[c]ourts of record, in handling divorce, alimony, or habeas corpus cases involving the custody of a child or children, may transfer the question of the determination of custody and support to the juvenile court for investigation and a report back to the superior court *or for investigation and determination. If the referral is for investigation and determination, then the juvenile court shall proceed to handle the matter in the same manner as though the action originated under this article,* in compliance with the order of the superior court." (Emphasis supplied.)

The transfer here by the superior court to the juvenile court was for "determination," not for making a recommendation back to the superior court. Under OCGA § 15-11-62, the juvenile court may punish for contempt of court "for disobeying an order of the court. . . ."

"The theory upon which the right of a court to punish for *contempt* is, that 'Every court has power to compel obedience to its judgments, orders, and processes.' *Gaston v. Shunk Plow Co.*, 161 Ga. 287, 298 (130 S.E. 580). It necessarily follows that 'Only the court offended . . . has power to punish for the contempt, or to entertain proceed-

ings to that end.' *In re Fite*, 11 Ga. App. 665 (3) (76 S.E. 397)." *Goodrum v. Goodrum*, 202 Ga. 135 (4) (42 SE2d 450) (1947); *Mathis v. Corrugated Gear*, 263 Ga. 419, 420 (1) (435 SE2d 209) (1993).[1]

Here, the only order in place at the time of the hearing conducted by the superior court on "contempt" issues was that of the juvenile court. Therefore, the superior court had no jurisdiction to consider any motion for contempt of the juvenile court order. *Mathis*, supra; *Goodrum*, supra; *In re Fite*, supra.

Therefore, the order entered in Case No. 94-01119 is a nullity.

We need not further consider the second and third enumerations.

2. It likewise follows that the portion of the superior court order directing Gignilliat to pay Gentry's attorney fees is also a nullity.[2]

3. The remaining enumerations need not be addressed.

*Judgment reversed. McMurray, P. J., and Blackburn, J., concur.*

DECIDED JUNE 1, 1995.

*Rountree & Souther, George M. Rountree*, for appellant.
*Holle H. Weiss-Friedman*, for appellee.

---

[1] While a contempt action may be brought as a counterclaim in a superior court which has acquired jurisdiction and venue to modify a divorce and alimony decree, but which did not render that original decree, this is not the situation here. *Buckholts v. Buckholts*, 251 Ga. 58, 61 (302 SE2d 676) (1983); see *Davis v. Davis*, 259 Ga. 151 (377 SE2d 850) (1989).

[2] The provision of attorney fees in a divorce/custody proceeding is considered a type of temporary alimony, not applicable here. *Sullivan v. Sullivan*, 224 Ga. 679 (1) (164 SE2d 130) (1968).